IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHRISTIAN T. POWELL,

      Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC.
and JOHN DOE #'s 1-4,

      Defendants.

Case No. 26-cv-380-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Christian T. Powell, an inmate of the Illinois Department of Corrections who is currently incarcerated at Big Muddy River Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of her constitutional rights while at Menard Correctional Center.[1] In the Complaint, Powell alleges defendants were deliberately indifferent to her numerous medical conditions.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which

---

[1] Powell alleges that she is transgender and identifies as female (Doc. 1, p. 8). Thus, the Court will use she/her pronouns.

1

relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

In 2022, Powell entered IDOC custody and was transferred to Menard Correctional Center (Doc. 1, p. 8). She alleges that she is a transgender male who identifies as female (*Id.*). She is also gay (*Id.*). She was sentenced to 22 years' imprisonment for criminal sexual assault involving a minor male (*Id.*). Because of her conviction, correctional officers at Menard directed her to apply for protective custody because of her criminal case, sex offender status, and sexual orientation (*Id.*).

Powell notes that she is 54 years old and suffers from numerous medical conditions. These conditions include allergies, lower back pain, Hepatitis C, vision problems, high blood pressure and cholesterol, and conditions stemming from a stroke in 2019 (Doc. 1, p. 8). Powell also notes conditions that arose after her placement in protective custody, including skin and scalp disease, stomach problems, migraines, and mental health issues (*Id.* at pp. 8-9). Powell submitted numerous sick call slips before being seen by a nurse (*Id.* at p. 9). She does not indicate the date that she saw the nurse but alleges that the nurse provided her with over-the-counter medications and referred her to a doctor (*Id.*).

Despite submitting additional sick call slips and numerous grievances, Powell did not see the nurse practitioner until November 2022 (*Id.*). The nurse practitioner provided Powell with medications and referred her for outside care (*Id.* at p. 10). Powell alleges the following conditions were addressed by the nurse practitioner:

2

**Orthopedic Issues**

The nurse practitioner referred Powell to an orthopedic specialist for issues with her back (Doc. 1, p. 11). On March 7, 2023, Powell was transported to the clinic for the appointment, but an ice storm closed the clinic before she arrived (*Id.*). Thus, officers transported her back to the prison. Powell maintains that the appointment was never rescheduled. But Powell acknowledges she received an MRI shortly after the canceled appointment with the specialist. She was diagnosed with a herniated disc rupture and a bulging disc (*Id.*). She eventually saw a neurosurgeon for her condition and was offered two surgical options (*Id.*). She was also prescribed steroid injections, pain medications, and muscle relaxers (*Id.*). Although Powell alleges that she informed the surgeon that she wanted to pursue one of the surgical options, she did not receive any additional care (*Id.*).

**Pinky Finger**

Prior to entering IDOC custody, Powell was assaulted at the St. Clair County Jail and broke her left pinky finger (Doc. 1, p. 12). Upon arriving at Menard, she received ibuprofen and was referred to the doctor (*Id.*). Powell alleges that her appointment with the orthopedist was supposed to include the deformity in her pinky finger, but the appointment was canceled due to the storm and never rescheduled (*Id.*). Powell alleges that she suffers from severe cartilage damage and is in constant pain (*Id.*).

**Hepatitis C**

Prior to her arrival at Menard, Powell was also diagnosed with Hepatitis C. She acknowledges that she was eventually cured of the condition in early 2024, but she claims it took two years of submitting requests to be properly treated (Doc. 1, p. 12).

3

**Skin Conditions**

While housed in protective custody, Powell alleges that she developed eczema and psoriasis on her hands, face, and feet (Doc. 1, p. 12). She also suffered from severe dandruff on her scalp (*Id.*). She submitted several sick call requests and was eventually seen by a nurse who prescribed hydrocortisone for her skin and a medicated shampoo (*Id.* at p. 13). She alleges that neither medication relieved her condition and she did not receive any other medication until seeing the nurse practitioner in November 2022 (*Id.* at p. 13). The nurse practitioner prescribed additional medications for her conditions and referred her to a dermatologist (*Id.*). Powell alleges that she did not see the dermatologist while housed at Menard (*Id.*).

**Stomach/Digestive Issues**

Powell also developed unspecified digestive issues while housed in protective custody (Doc. 1, p. 13). She submitted request slips and grievances and eventually saw a nurse for her issues (*Id.*). The nurse provided Powell with antacid tablets and Pepcid AC for her indigestion (*Id.*). She received no further treatment until meeting with the nurse practitioner in November. Powell alleges that her stomach issues stemmed from the stress and anxiety she faced in protective custody and the stress of the delays in her medical care (*Id.* at pp. 13-14). The nurse practitioner prescribed Powell medication, which helped her condition for a few months (*Id.* at p. 14). She alleges that her digestive system was permanently altered by the eight-month delay in seeing the nurse practitioner. She believes she might have developed an ulcer from the stress (*Id.*).

**Mental Health Issues**

Powell alleges that as a result of the stress and anxiety she faced in protective custody, she eventually requested mental health treatment (Doc. 1, p. 14). Powell saw a telepsych provider and was prescribed Remron (*Id.*). But the medication produced intense nightmares and other side effects (*Id.*). She was initially prescribed another medication to help with the side effects but ultimately stopped taking the medications after a year because of the side effects (*Id.*). Despite developing severe depression and suicidal thoughts, she continued to see mental health professionals and was eventually diagnosed with gender dysphoria, depression, and anxiety (*Id.*).

**Allergies**

Powell alleges that she is also allergic to dust, and Menard is filled with dust, mold, bugs, mildew, and rodents (Doc. 1, p. 14). The conditions at the prison affected her allergies and breathing. Powell believes that her lungs were permanently injured by the unsanitary conditions she faced at Menard (*Id.* at pp. 14-15). Powell developed a lung infection right after arriving at Menard, and she wrote numerous sick call requests and grievances in an attempt to renew her allergy medication (*Id.* at p. 15). Her infection eventually cleared up after receiving amoxicillin for an abscessed tooth (*Id.*). The first time she saw a nurse at Menard, the nurse provided Powell with sinus pills and medication for mucus (*Id.*). She received no other treatment until November 2022. Powell alleges that she now suffers from shortness of breath, issues with breathing through her nose, and constant migraines. She attributes these conditions to the delays in treatment she experienced at Menard (*Id.*). Powell notes that she had a prescription for Benadryl

5

when she arrived at Menard but after she ran out of the medication, she was unable to obtain a refill (*Id.*). She later received Excedrin for her migraines, which has helped her condition (*Id.* at p. 17).

**Additional Conditions**

Powell notes that when she arrived at Menard, she not only had a prescription for Benadryl, but prescriptions for high blood pressure, high cholesterol, and a blood thinner (*Id.*). The medications expired numerous times, and she had to file grievances in order to obtain refills (*Id.*). Powell alleges she was constantly writing requests and grievances to receive the refills which caused undue stress. She previously suffered a stroke in 2019, and the medications were to prevent a subsequent stroke (*Id.* at p. 15). Powell notes that Menard was aware of her condition but still she was required to submit numerous grievances in order to obtain refills of her medications (*Id.* at p. 16).

Powell notes that she wrote numerous grievances and none were returned until she transferred to Pinckneyville Correctional Center. She notes that the responses are all dated September 1, 2023 (*Id.* at p. 16). She alleges her cumulative counseling summary indicates that additional grievances were received but never returned (*Id.*). She alleges that hundreds of grievances disappeared and were never documented (*Id.*). She also had a medical hold while at Menard but was still never sent out for additional treatment (*Id.* at p. 18). She eventually signed a waiver indicating she did not want any more treatment in hopes of transferring to another prison (*Id.*). She believes the eight-month delay from her arrival at Menard until she saw the nurse practitioner caused permanent damage (*Id.*).

6

Powell believes that her issues with medical care at Menard also stem from her sexual identity (Doc. 1, p. 9). She indicates that other individuals that identify as part of the LGBTQ+ community had similar experiences trying to obtain medical care (*Id.*). She was subjected to hateful remarks from officers that affected her mental health (*Id.*). Powell notes that she previously filed a lawsuit about her medical conditions.

Powell identifies several individuals and entities whom she alleges were responsible for delays in her medical care. Specifically, she alleges that Wexford Health Sources, Inc., the medical provider contracted by IDOC to provide medical care for all of its inmates, had policies and procedures that caused delays in her care (Doc. 1, p. 19). She alleges that the medical staff at Menard ignored, blocked, and buried records, requests, and grievances in order to save the company money (*Id.*). She points to Wexford's provider handbook, alleging that the handbook identifies numerous policies and practices that amount to deliberate indifference (Doc. 1, pp. 74-98).

Powell also identifies numerous John Doe defendants. She alleges John Doe #1 Health Care Administrator was in charge of overseeing all healthcare at Menard and approved or disapproved the recommendations made by doctors, nurses, and specialists (Doc. 1, p. 20). John Doe #1 also had final authority of all medical grievances. Powell alleges John Doe #2 reviewer of medical grievances reviewed all grievances submitted to the healthcare unit by the grievance officer or counselor (*Id.*). She alleges John Doe #2 improperly held her grievances for seven to nine months before her transfer to Pinckneyville (*Id.*). John Doe #3 is the doctor/nurse practitioner who treated Powell in November 2022 (*Id.* at p. 21). Finally, John Doe #4 is the medical furlough coordinator.

**Discussion**

Powell acknowledges that this is her third attempt to bring claims regarding the medical care she received at Menard. On May 15, 2023, she filed *Powell v. Wills, et al.,* Case No. 23-cv-01644-GCS, against Wardens Anthony Wills and Kevin Reichert and Healthcare Administrator Angela Crane. *See* Case No. 23-cv-01644-GCS (Doc. 1). That case was ultimately dismissed with prejudice because Powell failed to state a viable claim in her amended pleading. She was assessed a strike pursuant to 28 U.S.C. § 1915(g). Case No. 23-cv-01644-GCS (Doc. 14).

Powell subsequently filed another lawsuit about her medical conditions. In *Powell v. Wexford Health Sources, Inc., et al.,* Case No. 25-cv-01696-SMY, Powell's complaint again alleged that she suffered from numerous medical conditions that went untreated until she saw the nurse practitioner in November 2022. *See* Case No. 25-cv-01696-SMY (Doc. 1, p. 7). As with her current case, Powell alleged that John Doe #1 Health Services Administrator, John Doe #2 reviewer of medical grievances, John Doe #3 doctor/nurse practitioner, and John Doe #4 medical furlough coordinator acted with deliberate indifference in delaying treatment for her various conditions while at Menard. *Id.* at pp. 9-10. She listed numerous conditions she suffered while at Menard, including allergies, lower herniated disc and bulging disc, eczema, psoriasis, dandruff, broken pinky finger, Hepatitis C, migraines, high blood pressure and cholesterol, indigestion, mental health issues, and history of stroke. Case No. 25-cv-01696-SMY (Doc. 1, p. 8). She also alleged that Wexford Health Sources, Inc. had unconstitutional policies and procedures. On March 3, 2026, Powell's Complaint was dismissed with prejudice as a sanction for

Powell's failure to disclose the strike she received for her first case. Case No. 25-cv-01696-SMY (Doc. 12).

Powell subsequently filed this case. She acknowledges that this is her third attempt to pursue deliberate indifference claims for her healthcare at Menard (Doc. 1, pp. 9-10). But Powell is barred from proceeding with these claims for a third time. "Res judicata, or claim preclusion, bars any claims that were litigated or could have been litigated in a previous action when three requirements are met: '(1) an identity of the causes of action; (2) an identity of the parties or their privies; and (3) a final judgment on the merits.'" *Bell v. Taylor*, 827 F.3d 699, 706 (7th Cir. 2016) (quoting *Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 121 F.3d 1027, 1034 (7th Cir. 1997)).

Here, Powell's deliberate indifference claim for her issues with medical care is clearly precluded by res judicata. Both of Powell's earlier proceedings focused on the medical care she received after arriving at Menard and the eight-month delay she experienced between her arrival and her appointment with a nurse practitioner. All three cases focus on the same medical conditions identified by Powell in her present case including orthopedic issues, gastrointestinal issues, mental health, Hepatitis C, skin conditions, allergies, her broken pinky finger, and treatment for her prior stroke. *See* Case No. 23-cv-01644-GCS (Doc. 14, pp. 3-5); Case No. 25-cv-01696-SMY (Doc. 1, p. 8). *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 339 (7th Cir. 1995) (a claim is the same as a previously litigated claim if the two "emerge[] from the same core of operative facts" and "are based on the same, or nearly the same, factual allegations"). The defendants in Case No. 25-cv-01696-SMY are also identical to the defendants Powell seeks to proceed

9

against in this case.[2] Finally, Powell's previous case was dismissed with prejudice because she failed to disclose her litigation history. The dismissal amounted to a final judgment for res judicata purposes. *See Tartt v. Nw. Cmty. Hosp.*, 453 F.3d 817, 822 (7th Cir. 2006) (dismissal for failure to prosecute amounted to a final judgment on the merits); *Fed. Election Comm'n v. Al Salvi for Senate Comm.*, 205 F.3d 1015, 1020 (7th Cir. 2000) (district court's *sua sponte* dismissal of a claim as a sanction for failure to prosecute constituted a final adjudication on the merits for res judicata purposes).

Although claim preclusion is usually an affirmative defense, it is clear from the pleading that Powell's claims are barred, and dismissal at this early stage is justified. *Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002). Because Powell has already attempted to bring these claims and the claims were previously dismissed with prejudice, her current attempt to litigate these claims is barred by res judicata. Thus, the Complaint is **DISMISSED with prejudice**.

### Disposition

Accordingly, this entire action is **DISMISSED with prejudice.** The Court counts the dismissal of this action as one of Powell's three "strikes" within the meaning of 28 U.S.C. § 1915(g).

If Powell wishes to appeal this Order, she must file a notice of appeal with this

---

[2] In Case No. 23-cv-01644-GCS, Powell identified only wardens Anthony Wills and Kevin Reichert, as well as health care administrator Angela Crane, as defendants. But Powell does not seek to proceed against the wardens in this case. And it is not entirely clear that Angela Crane is the same individual identified as John Doe #1 healthcare administrator in this case.

Court within **30 days** of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If Powell does choose to appeal, she will be liable for the $605.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999). She must list each of the issues she intends to appeal in the notice of appeal, and a motion for leave to appeal *in forma pauperis* must set forth the issues she plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than 28 days after the entry of judgment, and this 28-day deadline cannot be extended.

The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  June 30, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

11